UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY LEE CHATMAN,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>MATTHEW MARTEL,<br><br>　　　　Respondent. | ) Case No.: 1:10-cv-00545 - LJO - JLT<br>)<br>) FINDINGS AND RECOMMENDATIONS<br>) DENYING PLAINTIFF'S PETITION FOR WRIT<br>) OF HABEAS CORPUS<br>)<br>) (Doc. 7)<br>)<br>) |

　　　　Ricky Lee Chatman ("Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, which he filed on June 4, 2010. (Doc. 7). Respondent filed an answer to the petition on September 21, 2010. (Doc. 15). Having considered the record and the applicable law, for the following reasons, the Court recommends the petition for a writ of habeas corpus be **DENIED**.

**PROCEDURAL HISTORY**

　　　　Petitioner is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") pursuant to a judgment of the Superior Court of California, County of Tulare, following his conviction by jury on January 25, 2007, for first degree murder perpetrated by firing a gun at persons outside of a motor vehicle with the intent to inflict death. On June 7, 2007, Petitioner was sentenced to an indeterminate term of life without the possibility of parole, plus an enhancement of twenty-five years to life for the use of a firearm. (Cal. Penal Code §§ 187(a), 12022.53(d)).

Petitioner filed a direct appeal in the California Court of Appeal, Fifth Appellate District, which affirmed his conviction in an unpublished opinion on February 17, 2009. (*See* Doc. 15, Exh. A). Petitioner filed a petition for review in the California Supreme Court, which denied the petition on May 13, 2009. (Lodged Doc. 11).

On April 1, 2010, Petitioner filed a petition for writ of habeas corpus in Tulare County Superior Court, which was denied on April 5, 2010. (Lodged Doc. 12). The California Court of Appeal denied his petition without comment on June 24, 2010. (Lodged Doc. 13 at 2).

Petitioner initiated the action in this Court by filing a petition for writ of habeas corpus on March 29, 2010. He filed an amended petition on June 4, 2010 (Doc. 7), to which Respondent filed an Answer on September 21, 2010 (Doc. 14). Petitioner did not file a Traverse.

## **FACTUAL BACKGROUND**

The Court adopts the Statement of Facts in the unpublished decision by the Fifth DCA, which are presumed correct pursuant to 28 U.S.C. §§ 2254(d)(2), (e)(1). According to the Fifth DCA:

> By February 17, 2004, rap artist Nathan Mathews, Jr., had released two albums. Magnum Burrell and Danny Moran were friends of Mathews. Chatman was dating Rose Martinez. Burrell and Moran were dating Rose's daughters, Stephanie and Becky. Becky had a child from a prior relationship with Eric Cole.
>
> Chatman, Burrell, Moran and Cole often hung out with their girlfriends in an alleyway. Mathews often would drive through the alley with music playing. One day, when Mathews drove through the alley with music playing, Chatman told Curtis Bradley, "I'm gonna get that nigger."
>
> On February 15, 2004, Cole, Chatman and Moran were together while Chatman was calling around looking for some guns. Burrell's name specifically was mentioned during these calls. A while later they met up with Lester Loman. The four climbed into Loman's rental car. Loman drove, Cole was the front passenger, and Chatman and Moran were in the back seat. They stopped at Chatman's sister's house. Chatman went inside and returned a few minutes later with a gun, which he set between his legs.
>
> In the meantime, Burrell called Mathews. Mathews told his father and grandfather he was going to the store to get some "weed." Mathews took a great deal of money with him when he left for the store. Moran spoke to Burrell before Burrell and Mathews left for the store.
>
> Mathews drove to a local liquor store and gas station, with Burrell in the passenger seat, and pulled into the station. Then Loman drove into the gas station. When Loman pulled alongside Mathews' car, Chatman fired a gun three or four times. Moran saw Chatman holding the gun and put it between his legs. Cole noticed Chatman

wearing gloves and holding a smoking gun in his hand. Cole heard Chatman brag he "got one." After the shots were fired, Loman pulled away from the gas station.

Witnesses called police and officers arrived. The officers seized the store's video security tape. The shooting could not be seen on the tape, but the sound of three gunshots could be heard.

Meanwhile, Loman drove to Corcoran, where Cole's father lived. Cole's girlfriend, Taleisha James, was at the house. Moran and Chatman wanted to dispose of the gun. Chatman hid the gun in the fields. While in Corcoran, Chatman remarked, "That's one less nigger I got to worry about, might as well X him off the map." Chatman also admitted, "I killed one of 'em." "Shot four times and the gun jammed."

Thereafter, the four men and James all left for Tulare in Cole's truck. On the drive to Tulare, Chatman laughed and bragged about shooting Mathews. The next day Chatman visited James and told her what to say regarding what "supposedly" happened the prior evening. Chatman also told James he was planning to go to Montana.

After Chatman was arrested, he asked Moran to lie in order to help him avoid conviction. Moran agreed because he was fearful for his life. Chatman specifically asked Moran to write a letter, which Moran did.

James received threatening phone calls and her son's bedroom window was shot. After the preliminary hearing, James received threats to her life should Chatman be convicted. [Footnote omitted] Chatman asked Bradley to "forget" the prior threat he had made about Mathews.

Mathews died as a result of a gunshot wound to the back of his head. He had been shot with a 7.62x39-millimeter high-velocity bullet from an assault rifle. Police later found a 7.62x39-millimeter casing on the ground at the Cole residence in Corcoran.

Loman, Moran and Cole all claimed the shooting was a total surprise to them. Loman, however, pled guilty to voluntary manslaughter in connection with the shooting. Cole testified pursuant to a plea agreement that reduced his possible prison term from life to 12 years. The trial court found Loman and Cole to be accomplices as a matter of law, and left the determination of whether Moran was an accomplice to the jury.

The jury convicted Chatman of murder. The jury also found two firearm enhancements true….

(Doc. 15, Exh. A; *People v. Chatman*, 2009 Cal. App. Unpub. LEXIS 1255 (Feb. 17, 2009)).

## **JURISDICTION**

Relief under a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court, if "he is in custody in violation of the Constitution or laws or treaties of the

3

United States." 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of Tulare County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment, allows an inmate in state custody to seek a writ of habeas corpus in federal court. 28 U.S.C. § 2254; *Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding the AEDPA is applicable only to cases filed after its enactment). The matter now before the Court was initiated by the filing of the original petition on April 5, 2010. Thus, it is governed by the standards set forth in the AEDPA.

A petition for a writ of habeas corpus under 28 U.S.C. § 2254 will not be granted unless the prisoner has exhausted state court remedies or the state does not have an available corrective process. 28 U.S.C. § 2254(b). In addition, a prisoner must demonstrate that the adjudication by the state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2002); *Williams v. Taylor*, 529 U.S. 362, 412- 413 (2000). Consequently, the federal court looks to the last reasoned decision from the state court to determine whether habeas relief is available. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). If the dispositive state court order "does not furnish a basis for its reasoning," but was decided on the merits, the federal court conducts "an independent review of the record." *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2002). However, if the state court did not make a decision on the merits or denied the petition on procedural grounds, the federal court must conduct a *de novo* review of the petitioner's claims. *Pirtle v. Morgan*, 313. F.3d 1160, 1176 (9th Cir. 2002). In this case, the last reasoned decision on the claims now before the Court was given by the Fifth District Court of Appeals. (Doc. 15-1).

### A.    "Clearly established Federal Law"

The Supreme Court clarified that "'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  A decision is contrary to federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413.  However, relief may not be granted by a federal court "simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411; *see also Brown v. Payton*, 544 U.S. 133, 141 (2005) (relief may be granted when a state court identifies the correct governing legal principle but applies precedents of the Supreme Court to facts "in an objectively unreasonable manner").

### B.    "Unreasonable determination of the facts"

Under the AEDPA, the factual findings of the state court are "presumed to be correct" absent a rebuttal by the applicant with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  However, the presumption applies only to "pure questions of historical fact," and does not extend to a "mixed determination of law and fact." *Lambert v. Blodgett*, 393 F.3d 943, 976.  When reviewing factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment." *Jeffries v. Wood*, 114 F.3d 1484, 1500 (9th Cir. 1997) (quoting *Lindh v. Murphy*, 96 F.3d 856, 871 (7th Cir. 1996)).  A state court decision "adjudicated on the merits . . . and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceedings." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  Generally, a factual finding is unreasonable when "it is so clearly incorrect that it would not be debatable among reasonable jurists." *Jeffries*, 114 F.3d at 1500.

## DISCUSSION AND ANALYSIS

Petitioner asserts the trial court erred in issuing instructions to the jury.  (Doc. 7 at 4-11).  As an initial matter, an allegation that a jury instruction is incorrect under state law does not form a basis

for federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law"). Rather, relief is warranted where an erroneous jury instruction "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 1722 (1993) (citation omitted). Accordingly, the Court must consider "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 67 (1991); *Brecht*, 507 U.S. at 637. Significantly, a jury instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72; *Prantil v. California*, 843 F.2d 314, 317 (9th Cir. 1988).

### Ground One: "slight" evidence and accomplice corroboration

According to Petitioner, the jury instructions contained in CALCRIM Nos. 334[1] and 335[2] impermissibly "reduced the level of proof necessary for the government to carry its burden." (Doc. 7 at 7). *Id.* at 7. Petitioner argues, the instructions "undermined the presumption of innocence, violating [his] due process." *Id.* at 4. Further, he contends "a jury instruction which permits a finding of guilt based upon slight evidence is constitutionally defective, for it undermines the presumption of innocence and is also undermining the proof beyond a reasonable doubt." *Id.*

Petitioner presented this claim on direct appeal to the Fifth DCA, which determined "the trial court properly instructed the jury on accomplice testimony." (Doc. 15-1 at 7). The court analyzed and rejected Petitioner's claim as follows:

> The statement that accomplice testimony need be corroborated by only slight evidence is a correct statement of the law. (Pen.Code, § 1111; *People v. Zapien* (1993) 4 Cal.4th 929, 982.) The trial court has a sua sponte duty to instruct with CALCRIM No. 334 when warranted by the evidence. (*People v. Boyer* (2006) 38 Cal.4th 412, 466.) The corroboration requirement of Penal Code section 1111 is a collateral factual

---

[1] Notably, CALCRIM 334 requires the jury to find whether the witness was an accomplice before it is permitted to consider the evidence presented by that witness. Likewise, CALCRIM 335 precludes the jury from relying exclusively on evidence from an accomplice unless there is some evidence corroborating the accomplice's testimony on a topic which tends to connect the defendant to the commission of the crime.

[2] As noted by the Fifth DCA, CALCRIM Nos. 334 and 335 include the following paragraph: "Supporting evidence, however, may be slight. It does not need to be enough, by itself, to prove that the defendant is guilty of the charged crime[s], and it does not need to support every fact (mentioned by the accomplice in the statement/ [or] about which the [accomplice/witness] testified). On the other hand, it is not enough if the supporting evidence merely shows that a crime was committed or the circumstances of its commission. The supporting evidence must tend to connect the defendant to the commission of the crime." (Doc. 15-1 at 5-6).

> issue, not an element of the charged offenses that must be proven beyond a reasonable doubt. (*People v. Frye* (1998) 18 Cal.4th 894, 967.)
>
> The California Supreme Court in *People v. Richardson* (2008) 43 Cal.4th 959, 1024 recently reaffirmed the slight evidence standard. Neither *Richardson* nor any other California Supreme Court case of which we are aware holds that corroboration by slight evidence reduces the prosecution's burden of proof. We are bound by the decisions of the California Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)
>
> Chatman, however, contends that the United States Supreme Court decision in *Carmell v. Texas* (2000) 529 U.S. 513 (*Carmell*) stands for the proposition that a state's corroboration requirement of accomplice testimony is part of the quantum of evidence needed to convict and therefore must be proven beyond a reasonable doubt. Chatman misstates the holding of *Carmell*.
>
> The defendant in *Carmell* had committed rape at a time when Texas law required the testimony of a rape victim to be corroborated independently. At the time of trial, the law had changed to eliminate the corroboration requirement and the trial court applied the new law. (*Carmell*, supra, 529 U.S. at pp. 530-531.) The change in the Texas law constituted a change in the evidence needed to convict. (*Id.* at p. 522.) Because the defendant would have been acquitted under the former law, the United States Supreme Court held application of the new law to the defendant violated the ex post facto clause of the Constitution, but noted that nothing prohibited prospective application of the change in law. (*Id.* at pp. 552-553.)
>
> The *Carmell* court did not hold that corroboration evidence tested by a standard lower than beyond a reasonable doubt was constitutionally invalid.  Thus, Chatman's contention that *Apprendi v. New Jersey* (2000) 530 U.S. 466 requires proof beyond a reasonable doubt of corroboration evidence fails because it is based on his erroneous interpretation of *Carmell*.

(Doc. 15-1 at 5-6).  Respondent argues, "The state court's denial is reasonable."  (Doc. 15 at 17).

According to Petitioner, the Supreme Court held in *Carmell v. Texas* "that a state corroboration requirement is part of the 'quantum of evidence' necessary to convict."  (Doc. 7 at 4) (quoting *Carmel*, 529 U.S. 513, 533 n. 22 (2000).  In *Carmell* the Supreme Court determined an ex post factor violation occurred where the state of Texas retroactively applied an amended law that changed the requisite quantum of evidence.  *Id.* at 530.  The Court explained:

> Under the law in effect at the time the acts were committed, the prosecution's case was legally insufficient and petitioner was entitled to a judgment of acquittal, unless the State could produce both the victim's testimony *and* corroborative evidence.  The amended law, however, changed the quantum of evidence necessary to sustain a

7

>conviction; under the new law, petitioner could be (and was) convicted on the victim's testimony alone, without any corroborating evidence.

*Id.* (emphasis in original). Here, a law was not changed to alter the quantum of evidence necessary to sustain his conviction, and there is no ex post facto concern. Accordingly, *Carmell* is inapplicable.

The Supreme Court has held, "The Fourteenth Amendment does not forbid a state court to construe and apply its laws with respect to the evidence of an accomplice." *Lisenba v. California*, 314 U.S. 219, 227 (1941). Due process does not prohibit the use of uncorroborated accomplice testimony. *See United States v. Augenblick*, 393 U.S. 348, 352 (1969) (explaining "the use of accomplice testimony is not catalogued with constitutional restrictions" of procedural due process); *Darden v. United States*, 405 F.2d 1054, 1056 (9th Cir.1969) ("it is well established that a conviction in federal court may be based on the uncorroborated testimony of an accomplice"); *Harrington v. Nix*, 983 F.2d 872, 874 (8th Cir. 1993) ("state laws requiring corroboration do not implicate constitutional concerns that can be addressed on habeas review"); *Odle v. Calderon*, 884 F.Supp. 1404, 1418 (N.D. Cal. 1995) ("corroboration of accomplice testimony is not a federal constitutional requirement"). Given that uncorroborated testimony from an accomplice is permissible under the Constitution, testimony corroborated by "slight" evidence is also permissible, and does not violate Petitioner's right to due process. Consequently, Petitioner fails to demonstrate the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law." *See* 28 U.S.C. § 2254(d).

**Ground Two: Petitioner's burden of proof**

Petitioner asserts, "The Jury was given an instruction which assign[ed] to the defendant the burden of proving that a witness is a[n] accomplice shifting the burden of proof, which is a misapplication of Federal Law and Due Process." (Doc. 7 at 4). He argues the due process clause "require[s] the prosecution to present proof beyond a reasonable doubt of every fact necessary to constitute the charged crime, and the jury must be so instructed." *Id.* This claim was addressed by the Fifth DCA, which stated:

>Chatman also claims there was federal constitutional error when the trial court instructed the jury that he had the burden of proving Moran was an accomplice. Again, we disagree. It is the defendant who has the burden of establishing by a preponderance of the evidence that a witness is an accomplice whose testimony requires corroboration. (*People v. Williams* (1997) 16 Cal.4th 153, 247.) In *Frye, supra*, 18 Cal.4th 894, the

> California Supreme Court rejected a challenge that imposing this requirement on the defendant was a violation of due process.

(Doc. 15-1 at 7).

As explained above, the application of state law is not subject to federal habeas review. *See Estelle*, 502 U.S. at 67; *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989). It is well-established that the burden is on the prosecution to prove each and every element of the crime charged beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). Given that a state may require a defendant to prove a defense, it is not unreasonable for a state to require a defendant to prove a fact that does not constitute an element of the crime. Whether another person was an accomplice did not impact the prosecution's burden of proof against Petitioner. Therefore, his right to due process was not violated by the jury instruction. *See Francis v. Franklin*, 471 U.S. 307, 314 (1985).

The court in Saibu v. Cash, 2011 WL 3475388 at *20 (S.D. Cal. Aug. 8, 2011), held similarly. "Accomplice corroboration is not an element of any of the crimes with which Petitioner was charged, and therefore, CALCRIM No. 335 did not reduce the prosecution's burden of proof because the prosecution was not required to prove the veracity of [the accomplice] testimony beyond a reasonable doubt."

Moreover, Petitioner has failed to show the instruction violated his due process rights or that the instruction had a substantial or injurious effect on the verdict. Thus, he has failed to demonstrate the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," or an "unreasonable determination of the facts in light of the evidence." The claim must be rejected. 28 U.S.C. § 2254(d).

**Ground Three:  inadequacy of accomplice instructions**

In a related claim, Petitioner contends the instructions regarding accomplice corroboration were inadequate. Petitioner notes the accomplice instructions given "[r]equired only supporting evidence which tends to connect the defendant to the commission of the crimes." (Doc. 7 at 5). According to Petitioner, the instruction should have "requir[ed] corroboration of accomplice testimony in such a way [that reasonably satisfies the jury] that the accomplice is telling the truth." *Id.* He asserts

Section 1111 of the California Penal Code requires the court to instruct that "the veracity of the witness testimony can be independently verified." *Id.*

This claim was addressed by the Fifth DCA on direct appeal, where the court found Petitioner "forfeited a challenge to the completeness of the instruction by failing to raise it in the trial court." (Doc. 15-1 at 7) (citing *People v. Riggs*, 44 Cal.4th 248, 309 (2008)). Consequently, Respondent asserts, "Petitioner's claim is procedurally barred." (Doc. 15 at 22) (citations omitted).

The Supreme Court instructs, federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The Court explained, "The doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.* at 729-30. Accordingly, California's rule requiring a defendant to raise an objection at trial may bar Petitioner's habeas claim if the rule is both adequate and independent.

For a state procedural rule to be independent, the state law basis for the decision must not be interwoven with federal law. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003). A state law ground is interwoven with federal law if the state court's application of the procedural bar rests upon an antecedent ruling on federal law, such as the determination of whether federal constitutional error has been committed. *Id.* Here, the Fifth DCA did not rely upon federal law in its determination that Petitioner's challenge was forfeited. As a result, the procedural rule was independent of federal law.

A procedural rule is "adequate" where it is firmly established and regularly followed. *Walker v. Martin*, 131 S.Ct. 1120, 1127-28 (2011). Significantly, California's procedural rule requiring a defendant to challenge the completeness of a jury instruction at trial is "clear, consistently applied, and well-established." *Melendez v. Pliler*, 288 F.3d 1120, 1124-25 (9th Cir. 2002). Furthermore, the California rule is consistent with federal law, which also requires a timely objection to a ruling even if a constitutional right is involved. *See* Fed. R. Evid. 103(a)(1); *see also Yakus v. United States*, 321 U.S. 414, 444 (1944) ("No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it").

Because Petitioner failed to comply with the terms of California's procedural rule requiring challenges to the completeness of a jury instruction at trial, he is procedurally barred from bringing this ground for relief.

### Ground Four: "flight" instruction

As read to the jury, CALCRIM No. 372 provides: "If the defendant fled or tried to flee immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct. However, evidence, if there was such evidence, that defendant fled or tried to flee cannot prove guilt by itself." (Lodged Doc. 2, Vol. 9 at 962; *see also* Doc. 15-1 at 8, n.3). Petitioner argues this instruction contains "a permissive inference of guilt." (Doc. 7 at 10). According to Petitioner,

> CALCRIM No. 372 permitted the Jury to infer a consciousness of guilt if the defendant fled or tried to flee immediately after the crime. Although the prosecutor may have been relying on appellant's trip to Montana the next day, that was not the permissive inference authorized by the instruction. CALCRIM No. 372 authorized a permissive inference of guilt based on flight "IMMEDIATELY" after the crime.

*Id.* at 10. Petitioner concludes the issuance of the instruction was unconstitutional. *Id.* (citing *Ulster County Court v. Allen*, 442 U.S. 140, 166 n. 28 (1978); *United States v. Rubio-Villareal*, 967 F.2d 294, 296 (9th Cir. 1992)).

The Fifth DCA addressed this claim, and opined the trial court did not err in instructing the jury on flight. The Court reasoned:

> The evidence need not establish that a defendant physically ran from the scene or made an escape in order to warrant a flight instruction. What is required is some evidence indicating the defendant acted with the purpose of avoiding observation or arrest. (*People v. Bradford* (1997) 14 Cal.4th 1005, 1055.)
>
> Here, the instruction was warranted because, even though there was some evidence Chatman objected to the drive to Corcoran after the shooting, he did use the opportunity to hide the gun used in the shooting and made plans to leave the Tulare area and head to Montana. It was for the jury to decide initially if these actions constituted attempts to flee and, if so, what "meaning and importance" to give to that conduct. (CALCRIM No. 372.)
>
> Even if the giving of the flight instruction were error, any error would be harmless because (1) the instruction did not assume Chatman fled; it was up to the jury

to make that determination; and (2) there was overwhelming evidence that Chatman killed Mathews, including Chatman's own admissions. (*People v. Hannon* (1977) 19 Cal.3d 588, 603.)

(Doc. 15-1 at 8-9). As set forth above, the District Court is bound to the state court's interpretation of state law. *See Estelle*, 502 U.S. at 67; *Oxborrow*, 877 F.2d at 1399. Thus, this Court has determined: "whether or not the jury instruction on flight correctly stated California law or was applicable under California law to the charges against petitioner is not cognizable in [a] federal habeas petition." *Wright v. Hedgepeth*, 2012 U.S. Dist. LEXIS 50340, at *74 (E.D. Cal. Apr. 10, 2012).

The Court's review is limited to whether the flight instruction violated his right to due process. However, Petitioner has not demonstrated the instruction "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623. Indeed, the Ninth Circuit has observed a "flight instruction" may work to the benefit of a petitioner by clarifying "flight alone is insufficient to establish guilt." *Karis v. Calderon*. 283 F.3d 1117, 1132 (9th Cir. 2002). Consequently, Petitioner's claim that the instruction violated the due process clause must be denied.

**Ground Five:  instruction on suppression of evidence by others**

In his final claim for relief, Petitioner argues the trial court erred in instructing the jury using CALCRIM No. 371. This instruction provides:

> If the defendant tried to create false evidence or obtain false evidence, that conduct may show that he was aware of his guilt. If you conclude that the defendant made such an attempt, it is up to you to decide its meaning and importance. However, evidence of such an attempt cannot prove guilt by itself.
>
> If someone other than the defendant tried to create false evidence, provide false testimony or conceal or destroy evidence, that conduct may show the defendant was aware of his guilt but only if the evidence proves the defendant was present and knew about that conduct or, if not present, the evidence proves the defendant authorized the other person's actions. It is up to you to decide the meaning and importance of this evidence. However, evidence of such conduct cannot prove guilt by itself.

(Lodged Doc. 2, Vol. 9 at 961-62; *see also* Doc. 15-1 at 9). Petitioner asserts this instruction improperly "permitted the jury to infer a consciousness of guilt." (Doc. 7 at 11). He argues there was "no evidence that Petitioner authorized the threats [made to James]," and as a result "there was no rational way for the jury to draw the inference permitted by the instruction." *Id.*

Petitioner raised this issue on direct appeal before the Fifth DCA, which found his claim lacked merit. (Doc. 15-1 at 9). As an initial matter, the Fifth DCA noted Petitioner's argument "focuses solely on the evidence of threats made to James and completely ignores the other record evidence." *Id.* The court observed:

> After his arrest, Chatman asked Moran to lie for him and to write a letter for him in order to help him avoid conviction in the case. He also asked Bradley to "forget" the prior threats against Mathews that he had made. This constitutes evidence from which a reasonable jury could infer Chatman was willfully attempting to suppress evidence that might indicate his guilt. Under these circumstances, it is proper to instruct the jury on consciousness of guilt from suppression of adverse evidence. (*People v. Wilson* (2005) 36 Cal.4th 309, 330.) The trial court was warranted in instructing the jury with CALCRIM No. 371.
>
> Chatman also claims that CALCRIM No. 371 allowed the jury to consider the third party threats made to James to infer consciousness of guilt. Not so. The trial court specifically instructed that jury that it could *not* infer that Chatman had anything to do with any threats that might have been made to James and that the testimony regarding the threats was admitted for the limited purposes of how, if at all, they may have affected James's testimony. We presume the jury understood and followed these instructions. (*People v. Wilson*, *supra*, 44 Cal.4th at p. 803.)

(Doc. 15-1 at 9-10). Therefore, the Fifth DCA concluded the trial court properly instructed the jury with CALCRIM No. 371.

A permissive inference does not require a jury to draw a conclusion, but "suggests to the jury a possible conclusion to be drawn if the State proves predicate facts." *Francis v. Franklin*, 471 U.S. 307, 314 (1985). Here, the Fifth DCA concluded the instructions did not permit an inference of guilt based upon the evidence of threats made to James. As noted by the Fifth DCA, the jurors were instructed the evidence was submitted for the limited purpose of showing the threats may have affected James' testimony. In addition, the jurors were instructed: "During the trial, certain evidence was admitted for a limited purpose. I instructed you at the time of the admission of such testimony about the limited purpose for which the evidence was being received. You may consider that evidence only for that purpose and for no other." (Lodged Doc. 2, Vol. 9 at 953). The Court is bound by the state court's determination that CALCRIM No. 371 was given properly as a matter of California law.

Further, there is no basis for finding that the instructions violated Petitioner's due process. The Supreme Court explained a permissive inference is a violation of due process "only if the suggested

13

conclusion is not one that reason and common sense justify in light of the proven facts before the jury." *Francis*, 471 U.S. at 314 (citing *Ulster*, 442 U.S. at 157-63). As noted by the Fifth DCA, the jurors were instructed to not consider the threats made to James as evidence of guilt. Further, the instruction by the trial court was conditional and provided that evidence of suppression was, by itself, insufficient to support a finding of guilt. The jury is presumed to have followed the instructions of the trial court. *See Weeks v. Angelone,* 528 U.S. 225, 234 (2000) (citation omitted).

Petitioner has not demonstrated the instruction rendered his trial fundamentally unfair. *Estelle*, 502 U.S. at 72. Accordingly, the conclusion of the Fifth DCA was not contrary to federal law, and the state court reasonably rejected Petitioner's claim. *See Brecht*, 507 U.S. at 637.

## **FINDINGS AND RECOMMENDATIONS**

As set forth above, Petitioner is procedurally barred from proceeding on a claim that the accomplice instructions were inadequate. Further, the jury instructions identified by Petitioner did not have "a substantial and injurious effect or influence" upon the verdict. *See Brecht*, 507 U.S. at 637. Petitioner failed to meet his burden to show the purported instructional errors "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Lewis v. Jeffers*, 497 U.S. 769, 780 (1990). The state court's determination was not contrary to federal law, and the court reasonably applied clearly established federal law. *See* 28 U.S.C. § 2254(d).

Accordingly, the Court **HEREBY RECOMMENDS** that Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. 7) be **DENIED**.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one days after being served with these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

///

///

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **January 10, 2013**                              /s/ Jennifer L. Thurston
                                                                              UNITED STATES MAGISTRATE JUDGE